RENDERED: DECEMBER 14, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0521-DGE

CABINET FOR HEALTH AND FAMILY
SERVICES, COMMONWEALTH OF
KENTUCKY

APPELLANT

ON REVIEW FROM COURT OF APPEALS
NO. 2021-CA-1011
V.  JEFFERSON FAMILY COURT
NO. 20-AD-500234

D.W.; N.W.W., A CHILD; AND T.A.,
NATURAL MOTHER

APPELLEES

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>REVERSING</u>**

This case comes before the Court on review from the Court of Appeals' decision reversing the termination of D.W.'s parental rights. Critically, the Court of Appeals only reached that substantive issue after concluding that statutory law regarding the sealing of termination of parental rights (TPR) cases, the Civil Rules of Procedure (now Rules of Appellate Procedure), and eFiling Rules contain ambiguities regarding the timing for electronically filing a notice of appeal in a sealed case. Accordingly, the Court of Appeals held that D.W. had complied with the applicable rules in filing his notice of appeal. After review, we conclude the Court of Appeals erred. There is no ambiguity and D.W. did not comply with the applicable rules. Consequently, the Court of

Appeals was without jurisdiction to hear the case. The Court of Appeals is reversed and the trial court's termination of D.W.'s parental rights is reinstated.

## I. Procedural Posture

Since our decision concerns only the procedural issues involving the timely filing of a notice of appeal electronically, we omit any discussion of the underlying facts of the case. It suffices to note that on July 20, 2021, the trial court issued a written final order—including findings of fact, conclusions of law, and judgment—terminating the parental rights of D.W. and T.A. That order was subsequently entered by the circuit clerk on July 21, 2021. The parties are in agreement that D.W. had thirty days to file his notice of appeal. *See* CR[1] 73.02(1)(a).[2]

As the Court of Appeals noted, D.W.'s counsel filed an electronic notice of appeal on August 20, 2021, at approximately 11:47 pm. But the TPR case that counsel attempted to file the notice of appeal in was sealed by the circuit clerk at some point after entry of the final order on June 21, 2021. Therefore, counsel filed the notice of appeal for the TPR case in the related dependency, neglect, and abuse (DNA) case against D.W. The DNA case was captioned No.

---

[1] Kentucky Civil Rules of Procedure. This case was litigated in the lower courts prior to the effective change to the Rules of Appellate Procedure and amendment of Administrative Order 2018-11. We will cite to the former Civil Rules of Procedure and Administrative Order 2018-11 in the body of the opinion but include footnote citations to the current and controlling Rules of Appellate Procedure and Administrative Order 2022-65 where applicable.

[2] RAP 3(A)(1).

18-J-501741-003, while the TPR case was captioned 20-AD-500234. Counsel included a notation in the filing of the notice of appeal stating the TPR case was closed for electronic filing.

The circuit clerk docketed the notice of appeal for the TPR case in the DNA case. There is no docket sheet in the record for the TPR case showing when the notice of appeal was filed in that case. The Court of Appeals, on September 17, 2021, issued a show cause order as a result of the improperly filed notice of appeal. In its subsequent opinion, the Court of Appeals noted that D.W. argued he had complied with the jurisdictional deadline and that his erroneous filing was the fault of the circuit court clerk in "closing," i.e., sealing, the TPR case prior to the conclusion of the period for a notice of appeal. The Court of Appeals accepted that explanation and kept the case on its active docket.

In considering the eFiling Rules issued by this Court in Administrative Order 2018-11, the Court of Appeals wrote,

> Section 3(1) states, "these rules shall apply to supported case and filing types, in civil, criminal, domestic, juvenile, probate, and other matters in trial courts." Additionally, Section 3(2) allows users to eFile into "a supported action." It appears the only cases that are ineligible for eFiling are sealed cases. Section 9(3) provides that any document in a sealed case must be conventionally filed. Further, Section 15(4) states:
>
> > Access to confidential cases in CourtNet 2.0 is available to persons entitled by statute, except that non-government parties may be required to eFile into a confidential case in order to access the entire record. Sealed cases are not eligible for eFiling and are not viewable in CourtNet 2.0.

3

When read as a whole, these rules are not clear nor do they warn that a "supported action" can later become *unsupported and ineligible* for eFiling.

Accordingly, reasoned the majority, TPR cases are eligible for eFiling as a confidential case but then upon entry of the final order they become sealed and are no longer eligible for eFiling. The lower court concluded, "with no warning to the parties or practitioners, the TPR case becomes ineligible for eFiling at what is, arguably, the most critical stage of the case." As a result of this "ambiguity" in the rules, the Court of Appeals held that eFiling rules are intended "to allow greater and more convenient access to Kentucky's trial courts." Thus, it concluded D.W. complied with the rules for timely filing a notice of appeal.

Judge Goodwine dissented. Citing Administrative Order 2018-11 § 15(4)—stating "[s]ealed cases are not eligible for eFiling . . ."—and KRS 625.108(2)—directing the circuit clerk shall seal TPR cases "upon the entry of the final order . . ."—she concluded there is no ambiguity in the law nor are there exceptions in the eFiling Rules. As to the contention that the circuit clerk had erred by sealing the case prior to the period for filing a notice of appeal ended, Judge Goodwine held that argument was contrary to the clear language of KRS 625.108(2). Accordingly, she would have held the court without jurisdiction as the notice of appeal was improperly filed.

## II.     Standard of Review

"Without the properly filed notice of appeal, the appellate court lacks jurisdiction to consider the matter." *Cab. for Health and Fam. Servs. v. H.C.,*

4

581 S.W.3d 580, 583 (Ky. 2020). There is no substantial compliance rule with timely filing a notice of appeal, and the mandatory application of the rule applies "even when the appealing party makes a good faith effort to file the notice of appeal." *Id.* Our review of a defect in a notice of appeal regarding its timely filing is essentially *de novo.* But "if an appeal's alleged defect is anything other than failure to file a timely notice of appeal, timely cross-appeal, or timely notice for discretionary review, an appellate court should consider, on a case-by-case basis, an adequate remedy to address the alleged defect." *M.A.B. v. Cab. for Health and Fam. Servs.*, 635 S.W.3d 90, 97 (Ky. 2021).

Neither can the Court of Appeals obtain jurisdiction of one case through the improper and intentional filing of a notice of appeal in a separate, albeit related, case. CR 73.03[3] requires a notice of appeal to identify "the judgment, order or part thereof appealed from." This rule has always required strict compliance. *Rose Bowl Lanes, Inc. v. City of Louisville*, 373 S.W.2d 157, 158-59 (Ky. 1963); *Browning v. Preece,* 392 S.W.3d 388, 392 (Ky. 2013). Implicit in this requirement and, indeed, in the very nature of the notice of appeal is that the notice be filed in the correct case. This issue is obviously jurisdictional—to allow a party to intentionally misfile a notice of appeal is an invitation to chaos. There is no substantial compliance or good faith exception to timely filing a notice of appeal in the correct case. *H.C.,* 581 S.W.3d at 583.

The interpretation of statutes, the rules of civil and appellate procedure, and this Court's own administrative orders are questions of law subject to *de*

---

[3] RAP 2(B)(1).

*novo* review, and we give no deference to the Court of Appeals. *Puckett v. Cab.*

*for Health and Fam. Servs.*, 621 S.W.3d 402, 407 (Ky. 2021).

### III. Analysis

KRS 625.108(2) states in full,

> The files and records of the Circuit Court, excluding the name or
> other identifying information of a prospective adoptive parent,
> during proceedings for involuntary termination of parental rights
> shall not be open to inspection by persons other than parties to
> such proceedings, their attorneys, and representatives of the
> cabinet except under order of the court expressly permitting
> inspection. Upon the entry of the final order in the case, the clerk
> shall place all papers and records in the case in a suitable
> envelope which shall be sealed and shall not be open for inspection
> by any person other than representatives of the cabinet without a
> written order of the court or as authorized by the provisions of KRS
> Chapter 199.

The key words for purposes of this case, are that TPR cases shall be sealed by

the circuit clerk "[u]pon the entry of the final order in the case . . ." *Id.*

Administrative Order 2018-11 § 15(4)[4] states in full

> Access to confidential cases in CourtNet 2.0 is available to persons
> entitled by statute, except that non-government parties may be
> required to eFile into a confidential case in order to access the
> entire record. Sealed cases are not eligible for eFiling and are not
> viewable in CourtNet 2.0.

The key words in this regulation are that "[s]ealed cases are not eligible for

eFiling . . . ." Nonetheless, it must be noted that this section makes a

distinction between confidential cases and sealed cases; i.e., confidential cases,

such as a TPR action, are viewable in CourtNet 2.0 and can support eFiling,

while sealed cases are not viewable in CourtNet 2.0 and are not eligible for

---

[4] Administrative Order 2022-65 § 16(4).

6

eFiling. KRS 625.108(2) supports this distinction as well, as it treats sealed cases as otherwise closed, "and shall not be open for inspection by any person other than representatives of the cabinet without a written order of the court or as authorized by the provisions of KRS Chapter 199." In short, confidential cases are those that are not available to be viewed by the public-at-large but remain on-going, while sealed cases are those that are effectively resolved by the trial court's final order and unavailable for viewing except by the Cabinet for Health and Family Services, or other authorized persons, subject to a court order.[5]

As Justice Joseph Story once said for the interpretation of legal texts, "every word employed . . . is to be expounded in its plain, obvious, and common sense, *unless the context furnishes some ground to control, qualify, or enlarge it.*" Joseph Story, *Commentaries on the Constitution of the United States* 157-58 (1833) (emphasis added). Just as well "sentences are to be construed according to the rules of grammar, and from this presumption it is not permissible to depart," unless it should lead to an absurd result. *Gilbert*, 216 S.W. 105, 108 (Ky. 1919). KRS 625.108(2) considers "sealed" as something to be done upon a final order (a verb), and not as description of what a TPR case always is (an adjective). Likewise, it treats TPR cases as always confidential (an adjective) because the case is not "open to inspection by persons other than . . ." the parties, their attorneys, or cabinet representatives. *Id.* Thus, TPR cases

---

[5] See, e.g., KRS 199.570(1)(b) (forbidding access to adoption records to anyone without prior authorization of trial court).

are always confidential but shall only be sealed upon entry of the trial court's final order; and upon being sealed they are no longer subject to mandatory eFiling.

Given that the statutory law and administrative rule, read together, effectively prohibit a notice of appeal to be electronically filed in a TPR case, it is perhaps an ill-considered outcome as a matter of policy. But "[i]t is well settled law that a court may not add language to the written law to achieve a desired result." *Fox v. Grayson*, 317 S.W.3d 1, 8 (Ky. 2010). There is nothing ambiguous about these rules. Contrary to the Court of Appeals' assertion that litigants are "unwarned" that they cannot file a notice of appeal in sealed cases, a plain reading of KRS 625.108(2) and Administrative Order 2018-11 § 15(4) make it clear that outcome is obvious.

It is true that a case is not technically final and resolved until the time for filing an appeal has passed or otherwise been affirmed on appeal. But "[i]t is not allowable to interpret that which needs no interpretation." *Gilbert*, 216 S.W. at 108. To hold that the circuit clerk should have waited to seal the TPR case until the conclusion of the period for filing an appeal or until after an appeal has been adjudicated is nothing else than rewriting the statute. "Upon entry of the final order in the case" does not and cannot mean "until the deadline for the filing a notice of appeal has ended." A "final order" is a legal term of art that has had a consistent meaning since the time of Blackstone, if not earlier. *Kentucky Heating Co. v. City of Louisville*, 198 S.W. 1150, 1152 (Ky. 1917). For centuries it has been understood that it is a trial court's determination that "at

8

once put[s] an end to the action, by declaring that the plaintiff has either entitled himself, or has not, to recover the remedy he sues for[,]" which constitutes a final order or judgment, and from which an appeal can be taken. *Id.* There can be no doubt as to the General Assembly's meaning and intention by including the phrase "final order" in KRS 625.108(2).

Nor can we amend or ignore our own Administrative Order simply because a case has arisen where a seemingly harsh result occurs via its unambiguous application. We have issued our own rules regarding eFiling in TPR cases pursuant to this Court's constitutional rulemaking authority. Ky. Const. § 116. Accordingly, we have declared that both voluntary and involuntary TPR actions are mandatory eFiling cases. Administrative Order 2023-21. Likewise, we anticipated their sealing and the necessity for conventional filing of appeals by stating, "If a document is not eligible for eFiling, it may be conventionally filed." *Id.*

Thus, TPR cases are always confidential but shall only be sealed upon entry of the trial court's final order; and upon being sealed they are no longer subject to mandatory eFiling. Once the TPR case is sealed, the notice of appeal is a document not eligible for eFiling.

One final consideration that is not at issue here but supports our holding is that CR 73.02(1)(D)[6] states, "[u]pon a showing of excusable neglect based on a failure of a party to learn of the entry of the judgment or an order which affects the running of the time for taking an appeal . . . ." there may be allowed

---

[6] RAP 3(D).

9

an extension, not to exceed ten days, of the time to file a notice of appeal. But there is no excusable neglect here, even if such a motion had been filed, because D.W.'s counsel was clearly aware of the entry of the termination of parental rights, nor was there an intervening order that affected the time period to file an appeal. There is not any precedent that a notice of appeal can ever be *intentionally* filed *in a different case* because of the excusable neglect of counsel. Consequently, the Court of Appeals had no jurisdiction over the TPR case because no notice of appeal was ever properly and timely filed in the TPR case.

We are not entirely unsympathetic to D.W.'s plight in losing his appeal. But the proposition that we should make an exception for D.W. because he will lose out on his constitutional right to appeal by enforcing the rule that the notice of appeal be timely filed in the correct case, would swallow the rule. Every appellant who has missed the deadline for timely filing a notice of appeal could subsequently contend that enforcing the rule will deprive him or her of the right to appeal—it is an exception with no limiting principle. In that sense, it is not an exception at all but an entirely new rule that timely filing a notice of appeal in the correct case is not a necessary prerequisite to appellate jurisdiction. We decline to so hold.

## IV. Conclusion

KRS 625.108(2) unambiguously directs the clerk to seal TPR cases upon entry of the final order of the trial court, and we may not rewrite that statute to effectively read "until the period to file an appeal ends." Administrative Order

10

2018-11 § 15(4)[7] unambiguously precludes eFiling in sealed cases. Therefore, it was unambiguously incumbent upon D.W. to file his notice of appeal conventionally in the TPR case at any time between June 20, 2021, and August 20, 2021. He failed to do so. The Court of Appeals had no jurisdiction to hear the case. It is reversed.

All sitting. VanMeter, C.J.; Bisig and Nickell, JJ., concur. Keller, J., concurs in part and dissents in part by separate opinion. Thompson, J., dissents by separate opinion in which Lambert, J., joins.

KELLER, J., CONCURRING IN PART AND DISSENTING IN PART:

I fully concur with the Majority's well-written analysis interpreting the plain language of KRS 625.108(2). As a practical matter, however, it is important to note that this Court has promulgated numerous administrative orders related to eFiling in an attempt to address the ever-changing technological landscape that exists in our current world. I openly, yet reluctantly, admit that sometimes these administrative orders are difficult to find, comb through, and interpret. Further, this Court has not provided any guidance on how these administrative orders interact with current statutes. Because of our failure to provide much needed clarity until today, I dissent in part in that I would allow D.W. to pursue his appeal in the very limited circumstances of this case. However, hereafter, all appeals must strictly comply with today's Majority's analysis. Therefore, I am also unwilling to join in the Dissent's extension of our substantial compliance doctrine.

---

[7] Administrative Order 2022-65 § 16(4).

11

THOMPSON, J., DISSENTING: I dissent from the majority opinion. I write separately to clarify that the notice of appeal was sufficient; any filing errors do not affect timeliness, and so, do not affect the validity of the appeal. Additionally, the clerk misinterpreted when the case was final and, rather than awaiting finality, sealed the case prematurely, denying access to defense counsel. Furthermore, special considerations should apply to any case in which problems in filing a notice of appeal will finalize termination of parental rights (TPR). On the merits, I would affirm the family court because clear and convincing evidence supported its finding that termination was in the best interest of the child.

We have before us a TPR case where the parties were electronically filing (eFiling) all their pleadings and motions throughout the pendency of the case. However, when it came time for D.W. (father) to file what was arguably the most critical filing, the notice of appeal, the eFiling system would not let father's counsel file this notice under the TPR case number. The clerk, erroneously interpreting Kentucky Revised Statutes (KRS) 625.108(2), determined that upon the entry of the termination of parental rights order, the parties would no longer be allowed to make any eFilings because the case was now sealed to all but the Cabinet.

This absurd and unprecedented action left counsel in a quandary when she sought to file father's notice of appeal before the filing deadline but after the clerk's office was physically closed. She acted reasonably in, rather than letting the deadline pass without filing his notice of appeal, filing the notice of

12

appeal into the same parties' dependency, neglect, and abuse (DNA) case. Although the eFiling was to another case number, the notice of appeal itself was absolutely clear about who was appealing, in what action, and from what order.

There was nothing confusing or ambiguous about counsel's actions. The necessary parties all received appropriate and timely notice, and no one was thereby prejudiced. However, the majority opinion terms this error "jurisdictional" and declares that the Court of Appeals erred in reviewing this termination of parental rights and reversing it. A greater injustice in depriving a parent of appellate review is difficult to imagine.

## I. The Notice of Appeal Properly Invoked the Jurisdiction of the Court of Appeals.

The majority opinion states a properly filed notice of appeal is jurisdictional, there is no substantial compliance rule which would excuse the untimely filing of a notice of appeal, and "[n]either can the Court of Appeals obtain jurisdiction of one case through the improper and intentional filing of a notice of appeal in a separate, albeit related, case." For support of this third proposition, the majority opinion cites to Kentucky Rules of Civil Procedure (CR) 73.03/Kentucky Rules of Appellate Procedure (RAP) 2(B)(1) as requiring that a notice of appeal identify "the judgment, order or part thereof appealed from."

I agree that a timely filed notice of appeal is jurisdictional, and I agree that CR 73.03/RAP 2(B)(1) requires that a notice of appeal identify "the judgment, order or part thereof appealed from." The majority opinion conflates

13

the eFiling "envelope" which contains a notice of appeal, with being the notice of appeal itself. I believe the term "notice of appeal" relates to the court document labeled "notice of appeal," not to the route by which it is filed. While the eFiling envelope may have incorrectly identified the case being appealed, the substantive eFilings contained therein did not. Instead, an entirely suitable notice of appeal (which contained an appropriate and correct caption to the TPR case naming the correct parties, case number and judge, and which identified the correct judgment being appealed) and motion to proceed *in forma pauperis* were filed therein. I disagree that this misfiling of an appropriate notice of appeal under the wrong case number "is obviously jurisdictional."

I also disagree that *Cabinet for Health & Fam. Servs. v. H.C.*, 581 S.W.3d 580, 583 (Ky. 2020), provides any support for this notion. *H.C.* involved a late filing of a notice of appeal accompanied by a motion pursuant to CR 73.02 to excuse the late filing due to excusable neglect. *H.C.*, 581 S.W.3d at 582. Previously, the attorney filed a timely notice of appeal which was rejected by the clerk because it failed to either include a filing fee or a motion to proceed *in forma pauperis*. *Id.* The Court opined that failing to file the notice of appeal with an appropriate motion to waive the fee could not justify a late filing because the prior incorrect filing was not the result of excusable neglect. *Id.* at 583-84.

Here, father does not argue that he should be permitted a late filing due to excusable neglect. Instead, he argues that his filing was timely and appropriate.

In prior cases we have discussed that if a proper filing fee or motion to proceed *in forma pauperis* is not filed with the notice of appeal, the clerk can reject the filing but is not required to do so; this is because the failure to timely submit the filing fee or motion to proceed *in forma pauperis* is not jurisdictional. *See Foxworthy v. Norstam Veneers, Inc.* 816 S.W.2d 907, 910 (Ky. 1991) (concluding that the era of strict compliance was over, and it would treat the "failure to pay the filing fee as neither fatal nor jurisdictional"); *Norwest Bank Minnesota, N.A. v. Hurley*, 103 S.W.3d 21, 23 (Ky. 2003) (emphasizing that when the notice of appeal is timely filed, dismissal is not mandated, but when the notice of appeal is not timely filed, dismissal is mandated).

The clerk did not reject father's notice of appeal. Nor would the clerk have had any basis for doing so because the notice of appeal was timely and accompanied by an appropriate motion to waive the filing fee. Instead, the clerk accepted the notice of appeal; it was originally in the DNA case and later in the TPR case.

I vehemently disagree that a fatal error has been committed by father filing his notice of appeal for the TPR case in the DNA case's eFiling envelope. This is NOT a fatal error because the notice of appeal itself was timely filed and complied with all jurisdictional requirements.

**A. Relevant Facts**

Throughout the family court TPR case, the parties eFiled relevant documents into the record. On August 20, 2021, on the last day in which the

15

appeal could timely be filed, and after the clerk's office was closed, father's attorney eFiled four documents. Although counsel planned to, and attempted to, eFile these documents into the TPR case, counsel was unable to do so because a clerk had closed the TPR case to eFiling. Seeking an appropriate alternative to timely file the notice of appeal, counsel eFiled these documents into the third DNA action envelope. By being eFiled, the eFiling system generated a Notice of Electronic Filing (notice) with a hyperlink to the electronically filed documents, eFiling Rules § 8(3)(c), and these documents became part of the CourtNet DNA record.

The documents consisted of: (1) a Notice of Appeal for the TPR case (notice of appeal); (2) a Motion-Order: Motion to Waive Filing Fees to proceed *in forma pauperis* in the TPR case (motion); (3) an exhibit which was a screenshot print-out of the Kentucky Courts eFiling website's "case search" page indicating the result that eFiling could not be made into the TPR case (screenshot); and (4) a proposed Order: Waive Filing Fees to proceed in forma pauperis in the TPR case (order). The notice of appeal, motion-order and screen shot all bore the eFiling line "Filed 18-J-501741-003 08/20/2021 David L. Nicholson, Jefferson Circuit Clerk" which showed they were filed within the deadline. The notice of appeal and the motion-order each contained a certificate of service that they were mailed to the appropriate parties on August 20, 2021. The order contained an eFiling line that indicated it was "tendered" on August 20, 2021, into the DNA case. The notice of appeal and the order were both stamped filed as of August 25, 2021, the date when the order was granted.

16

In eFiling these documents (as noted on the notice that counsel received afterwards), the document titles were:

NOTICE - OTHER: NOTICE OF APPEAL 20-AD-500234
MOTION - OTHER: MOTION TO WAIVE FEES 20-AD-500234
EXHIBIT: 20-AD-500234 CLOSED FOR ELECTRONIC FILING
TENDERED DOCUMENT: ORDER WAIVING FEES

Any clerk viewing either the titles or the contents of these documents would have immediately been aware they pertained to the TPR action and not the DNA action. Additionally, the screenshot informed the clerk of the problem. The screenshot case search fields, which were filled out through drop-down options, showed that counsel had selected to file in the envelope for "Jefferson Family/District Civil" in case number "20-AD-500234." Below this, the "result" field stated "This case is closed and cannot be filed into: (CONFIDENTIAL) IN RE: W, N.W." Finally, counsel called the clerk and explained that these documents had been filed into the DNA action because the TPR eFiling was closed. While corrective action was taken by the clerk to place these documents into the correct case file, the timing of when this action was taken is unclear.

The notice of appeal and related documents submitted to the Court of Appeals from the family court and docketed on September1, 2021, were accompanied by a case history for the DNA case, reflecting that these documents were contained within the physical file of the DNA case. The case history indicated that these documents were all filed on August 20, 2021.

Due to confusion about where the notice of appeal was docketed and a lack of a corresponding judgment to the notice of appeal in the DNA case, on September 17, 2021, the Court of Appeals issued an order directing father to

17

show cause why the appeal should not be dismissed for proceeding improperly, as it appeared the notice of appeal was filed in the DNA case 18-J-501741-003. *D.W. v. Cabinet for Health and Family Services*, 2021-CA-1011-ME, 2022 WL 15527880, at *1 (Ky. App. Oct. 28, 2022) (non-final).

Father responded that the notice of appeal was timely because it was filed within the jurisdictional deadline and his inability to file it into the TPR case was due to the clerk erroneously closing access to eFiling prior to the expiration of the appeal period. Father also filed a motion asking the Court of Appeals to correct the underlying trial record to reflect that the notice of appeal was filed in the TPR action. *Id.* On October 12, 2021, the Cabinet filed a motion to dismiss, arguing the notice of appeal was untimely because it was filed into the TPR case after the filing deadline. *Id.* at *2. On February 22, 2022, the Court of Appeals denied the Cabinet's motion to dismiss, granted the motion to correct the record, and ordered the family court to certify the record. The physical case file of the TPR before us on appeal contains the documents originally filed in the DNA action, but it is unclear to me if the clerk filed them into the TPR case a few days later, as the Cabinet indicated took place as evinced by the later file stamp, or did not file the documents into the TPR case until directed to correct and certify the record. The clerk taking a corrective action to place the notice of appeal in the correct TPR case file, is much like a clerk allowing a party to submit a check later.

Ultimately, in a divided opinion, the Court of Appeals determined that the parties had previously been permitted to eFile in this TPR case, but this

18

ability was then curtailed without any notice based upon the case becoming sealed upon entry of the final order in accordance with KRS 625.108(2), with this "trap" resulting in "unsuspecting practitioners and parties" being "lured into a false sense of security that they may eFile a notice of appeal in their TPR actions up until the clock strikes midnight—when in reality they cannot." *D.W.*, 2022 WL 15527880, at *2. The Court of Appeals determined there was an ambiguity in the eFiling rules and concluded because the purpose of the rules was to provide access to the trial courts and designed to accept filings twenty-four hours a day, that it would allow the case to be decided on the merits. *Id.* at *3.

The Cabinet argues that the Court of Appeals incorrectly interpreted Kentucky's eFiling rules. The Cabinet argues that father's failure to conventionally file the notice of appeal as required for a sealed case (with the TPR case becoming sealed upon entry of the final order) on August 20, 2021, resulted in the notice of appeal being filed five days late as it was not placed into the correct file until August 25, 2021, and thus, was untimely. The Cabinet argues father had no excusable neglect in failing to conform to the filing rules and that just as the eFiling rules prohibit emailing a notice of appeal to the clerk or judge (eFiling Rules § 8(3)(c)), father "[f]iling his notice of appeal purposely in the wrong file is not substantially different than if he had just emailed the document to the clerk."

Father argues that the stamped filing date of August 25, 2021, on the notice of appeal does not indicate that it was first filed into the TPR case as of

19

that date, but instead indicates that the notice of appeal was effective as of that date because the family court first had to approve the motion, so that the appeal could proceed with the filing fee waived, and upon approving this motion, both the motion and the notice of appeal were then added to the certified record. He cites Appendix 1 of the Kentucky Court Clerk's Manual Rule 4.1.1(3), which indicates that the "filed" stamp is only to be affixed to a notice of appeal after either the receipt of a filing fee "or an order granting IFP [*in forma pauperis*] status to the appellant[.]"

Father argues that the purpose of a timely notice of appeal was satisfied because there is no dispute that all parties received appropriate and timely notice and asks that we uphold the Court of Appeals' decision that, as a matter of law, the notice of appeal was timely filed.

### B. The Notice of Appeal Properly Invoked the Jurisdiction of the Court of Appeals because Non-Substantive Errors Do Not Affect the Validity of the Notice of Appeal.

Kentucky Rules of Appellate Procedure (RAP)[8] 2(A)(1) states: "All appeals shall be taken by filing a notice of appeal in the court from which the appeal is taken within the time allowed by RAP 3." RAP 2(A)(2), specifies: "The timely filing of a notice of appeal is jurisdictional. The failure to comply with any other rules of appellate procedure . . . does not affect the validity of the appeal, but is ground for such action as the appellate court deems appropriate as set forth in

---

[8] I cite to the RAP even though the parties were subject to our prior analogous Kentucky Rules of Civil Procedure (CR), as the substance of these rules has not changed with the adoption of the RAP.

RAP 10."[9] RAP 2(A)(3) states: "The failure of a party to file a timely notice of appeal . . . shall result in a dismissal or denial."

In *Ready v. Jamison*, 705 S.W.2d 479 (Ky. 1986), our Court interpreted the analogous and then new provisions in CR 73.02(2), which RAP 2 and 10 replace, in determining whether timely notices of appeal which failed to properly designate a final judgment required dismissal of the appeals. The Court noted that the changed rule had altered "the policy of strict compliance with rules of procedure regarding appeals to a new policy of substantial compliance[,]" *Ready*, 705 S.W.2d at 481 (internal quotation marks and citation omitted), and held:

> With reference to the defects in the contents of the Notice of Appeal filed in the three cases presently under consideration, automatic dismissal is not an appropriate remedy. *Dismissal is not an appropriate remedy* for this type of defect <u>*so long as the judgment appealed from can be ascertained within reasonable certainty*</u> *from a complete review of the record on appeal* <u>*and no substantial harm or prejudice has resulted to the opponent*</u>.

*Id.* at 481-82 (emphasis added). The Court further commented "[w]ith this new policy [of substantial compliance] we seek to recognize, to reconcile and to further three significant objectives of appellate practice: achieving an orderly appellate process, deciding cases on the merits, and seeing to it that litigants

---

[9] This rule is similar to the Federal Rules of Appellate Procedure (Fed. R. App. P.) 3(a)(2), which provides in relevant part as follows: "*An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal*, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal." (Emphasis added).

21

do not needlessly suffer the loss of their constitutional right to appeal." *Id.* at 482.

Since *Ready,* our Court has repeatedly limited what errors require dismissal. *See M.A.B. v. Cabinet for Health & Fam. Servs.,* 635 S.W.3d 90, 93 (Ky. 2021); *Flick v. Estate of Wittich,* 396 S.W.3d 816, 820-21 (Ky. 2013); *Foxworthy,* 816 S.W.2d at 910. While under both our prior CR and current RAP the "filing of the Notice of Appeal within the prescribed time frame is still considered mandatory, and failure to do so is fatal to the action[,]" *Workers' Comp. Bd. v. Siler,* 840 S.W.2d 812, 813 (Ky. 1992) (internal citations omitted), "our policy of substantial compliance ensures the survival of an appeal despite clerical errors when no prejudice results from those errors and notice is sufficiently conveyed to the necessary parties[,]" *Flick*, 396 S.W.3d at 824. This is in accord with what the United States Supreme Court has opined about the federal standard: "imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court." *Becker v. Montgomery*, 532 U.S. 757, 767-68 (2001).

Although there is limited authority in Kentucky regarding the full parameters of how our policy of substantial compliance is to be applied, similar substantial compliance rules in other jurisdictions confirm that even multiple errors in a timely notice of appeal do not deprive an appellate court of jurisdiction, so long as it can be determined what is being appealed. *See Gov't of Virgin Islands v. Mills*, 634 F.3d 746, 752-54 (3d Cir. 2011). Our sister courts

22

have almost universally ruled that appellate jurisdiction still attaches to a timely filed notice of appeal under the following circumstances:

- **The notice of appeal is filed in the wrong court.** *See Nicholas v. Nat'l Union Fire Ins. Co.,* 74 A.3d 634, 635 (Del. 2013) (holding when an electronic notice of appeal, which was filed through the system which served two courts, was filed to the wrong court, this was sufficient to invoke jurisdiction where all parties received timely notice); *Perry v. Baskey,* 106 N.E.2d 790, 791-92 (Ohio App. 1951), *aff'd,* 107 N.E.2d 328, 340-41 (Ohio 1952) (holding notice of appeal filed with the clerk who served both courts was effective as no one could be seriously misled where the notice was "filed in the right church but in the wrong pew").[10]

- **The notice of appeal is filed under the wrong case number.** *See City of San Antonio v. Rodriguez,* 828 S.W.2d 417, 418 (Tex. 1992) (holding notice of appeal with wrong case number was effective where the rest of the notice of appeal was sufficient to identify what was being appealed); *Jackson v. State,* 385 S.W.3d 394, 395 n.1 (Ark. App. 2011) (concluding notice of appeal which designated the incorrect circuit court case number, where the Court was easily able to determine which order was being appealed, was "a mere scrivener's error").[11]

---

[10] *See also Alfonso v. Dep't of Env't Reg.,* 616 So. 2d 44, 47 (Fla. 1993); *People v. Greathouse,* 742 P.2d 334, 336-37 (Colo. 1987); *Russell v. Lamoreaux Homes, Inc.,* 424 P.2d 561, 563-64 (Kan. 1967).

[11] *See also First Merit Credit Servs. v. Fairway Aviation, LLC,* 860 S.E.2d 126, 129-30 (Ga. App. 2021); *Hearst-Argyle Props., Inc. v. Entrex Commc'n Servs., Inc.,* 778 N.W.2d 465, 468-69 (Neb. 2010); *D'Avola v. Anderson,* 54 Cal. Rptr. 2d 689, 691-92 (Cal. App. 1996); *Simmons v. Chicago Hous. Auth.,* 641 N.E.2d 915, 919 (Ill. App.

- **The notice of appeal is filed via the wrong filing method.** *See Contino v. United States,* 535 F.3d 124, 127 (2d Cir. 2008) (accepting notice of appeal that was rejected for being eFiled rather than arriving by mail, contrary to local rules); *VC & M, Ltd. v. Andrews*, 991 N.E.2d 323, 330 (Ill. 2013) (holding eFiled notice of appeal, although improperly filed, sufficient to confer jurisdiction although it should have been filed as a hard copy).[12]

This persuasive authority comports with my own understanding of Kentucky's rule of substantial compliance.

Assuming that father's counsel erred by eFiling this notice of appeal into the DNA envelope (rather than she was forced to do so due to an error of the clerk in prematurely closing the termination case for eFiling as I discuss below), the question thus becomes whether a timely and otherwise appropriate notice of appeal filed with the clerk's office through eFiling, can somehow become untimely by being filed in the wrong case. It cannot. I would hold father's eFiled notice of appeal sufficient to invoke appellate jurisdiction as the notice was (1) timely; (2) the judgment being appealed could be ascertained

---

1994); *Fleet v. Fleet*, 137 A.3d 983, 991 (D.C. 2016). Similarly, timely but erroneous eFiling at the trial level is sufficient to save actions from dismissal. *See Shuler v. Garrett*, 715 F.3d 185, 186-87 (6th Cir. 2013); *Farzana K. v. Indiana Dep't of Educ.*, 473 F.3d 703, 707 (7th Cir. 2007); *Blankenship v. Robins*, 878 S.W.2d 138, 139 (Tex. 1994).

[12] *See also Pierce v. Ocwen Loan Servicing, LLC*, 987 F.3d 579-80 (6th Cir. 2021); *Han Tak Lee Houtzdale SCI*, 798 F.3d 159, 163-65 (3d Cir. 2015); *Klemm v. Astrue*, 543 F.3d 1139, 1143 (9th Cir. 2008); *United States v. Harvey,* 516 F.3d 553, 556 (7th Cir. 2008); *Tex. G & S Invs., Inc. v. Constellation Newenergy, Inc.*, 459 S.W.3d 252, 257 (Tex. App. 2015).

within reasonable certainty; and (3) no substantial harm or prejudice resulted to the necessary parties because they received appropriate notice. *See* RAP 2; *Ready*, 705 S.W.2d at 481-82 (providing appropriate standard).

Had the attorney filed this same notice of appeal in paper form with the clerk, and the clerk then made the mistake of filing it into the DNA case rather than the TPR case, there would be no question that this would be a clerical error. The fact that the eFiling system, which is controlled by the clerk, required that the notice of appeal be misfiled in order to even be filed, does not mean that father should therefore be deprived of his right to an appeal.

Our eFiling Rules empower clerks to correct non-jurisdictional errors in accordance with our substantial compliance policy. Section 8(4)(b) authorizes the clerk to "return the envelope to the eFiler indicating what further action, if any, is required to address the error" without imperiling the timeliness of a filing. Section 8(4)(b) indicates "[t]imely correction [within two business days of receiving the returned envelope] shall preserve the original date and time found on the Notice of Electronic Filing." The clerk upon noting the filing error, could have returned the envelope to counsel, and requested that counsel refile the documents manually into the correct case by presenting the documents at the counter. Alternatively, the clerk could have disregarded the error of the documents being filed under the DNA envelope pursuant to § 8(4)(c) by manually filing the documents into the TPR case. Either action would be appropriate and authorized under these circumstances. However, a lack of action by the clerk's office does not deprive the appellate courts of jurisdiction;

25

appropriate action demands we remedy this non-substantive error. Therefore, I would affirm the portion of the Court of Appeals decision which held that there was appellate jurisdiction, albeit with different reasoning.

### C. The Phrase "Upon Entry of the Final Order in the Case" in KRS 625.108(2) Properly Refers to Whichever Opinion, Order or Judgment Finally Resolves a TPR Case and Does Not Foreclose eFiling of the Notice of Appeal in such a Case.

The premature closing of eFiling in the TPR case, which denied father the opportunity to eFile his notice of appeal into the correct file was a clerical error because such an action was based on a misinterpretation of what KRS 625.108 requires.

The operative portion of KRS 625.108(2) states as follows:

Upon the entry of the final order in the case, the clerk shall place all papers and records in the case in a suitable envelope which shall be sealed and shall not be open for inspection by any person other than representatives of the cabinet without a written order of the court or as authorized by the provisions of KRS Chapter 199.

We must interpret what "final order" means in this context. The analysis in *Palmer v. Commonwealth*, 3 S.W.3d 763 (Ky. App. 1999), supports the conclusion that the final order being referred to herein actually refers to the final order, opinion or judgment which finally concludes the case after the time has expired for further review. In *Palmer* the Court was tasked with interpreting the phrase "when the judgment becomes final" in Kentucky Rules of Criminal Procedure (RCr) 11.42(10); this was needed for calculating when the three-year period for filing a timely RCr 11.42 motion expired and further review was precluded. In determining that this phrase referred to the period *after* the judgment was finalized because no further appellate review was possible (either

26

because the time for taking an appeal had elapsed or because the last appellate judgment had become final), the Court analyzed the relevant language as follows:

> As a general rule of statutory construction, *expressio unius est exclusio alterius* provides that an enumeration of a particular thing demonstrates that the omission of another thing is an intentional exclusion. *Louisville Water Co. v. Wells,* Ky.App., 664 S.W.2d 525 (1984); *Wade v. Commonwealth,* Ky., 303 S.W.2d 905 (1957). Hence, we must view the omission of "of the trial court" when referring to the judgment in RCr 11.42(10) as intentional. Likewise, it has been held that where the legislation includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that the legislature acted intentionally and purposefully in the disparate inclusion or exclusion. *Keene Corp. v. United States,* 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). Thus, we must construe the judgment referred to in section (10) of RCr 11.42 to not be the judgment of the trial court, since the Supreme Court could have used the specific language "final order or judgment of the trial court" that they used in sections (7) and (8) if that was what they intended. Rather, instead of referring to a judgment of a specific court in RCr 11.42(10), the Supreme Court referred to the date when "the judgment becomes final" as when the time begins to run. This also leads us to believe that the Supreme Court meant the conclusive judgment in the case, whether it be the final judgment of the appellate court on direct appeal or the judgment of the trial court in the event no direct appeal was taken.

*Palmer,* 3 S.W.3d at 764–65.

When the methods of analysis set out in *Palmer* are applied to KRS 625.108(2), with the operative phrase "upon entry of the final order in this case" being considered in the context of KRS 625.108 as a whole—and its function within the entire chapter relating to termination of parental rights—I would interpret that "final order" means the final order of the final reviewing

appellate court or the order or opinion which finally concludes the case after the right to appeal has expired.

The general assembly enacted KRS 625.108 for the purpose of addressing the confidentiality and sealing of termination records. We have a unified Court of Justice and a piecemeal approach to confidentiality is neither warranted nor supported textually by the wording of this statute. While certain portions of the statute refer to a specific court's role, the absence of a reference to a particular court, as is the case with KRS 625.108(2), should not be interpreted to mean that the circuit court is intended. Instead, general language should be interpreted to relate to our whole court system. The files and records of the circuit court relating to termination cases are not open to the public whether they are currently housed with the circuit court clerk, in trial court chambers or before the Court of Appeals or the Supreme Court. Confidentially attaches to such records at all stages of the process. If a case has been appealed, upon the final resolution of the matter, the circuit court records are returned to the clerk along with the appellate court's judgment, to be made a part of that record. It is only then that the case is final.

A careful examination of the statute as a whole does not lend itself to the conclusion that the "final order" being referenced in (2) is specific to a circuit court judgment. The General Assembly demonstrated it could provide further clarity when desired, so the open-ended, passive language used in (2) should be interpreted broadly.

This interpretation is also bolstered by an examination of surrounding statutes in the chapter on termination of parental rights. KRS 625.108 was adopted in 1988 and has not been amended since. However, the 2018 amendments of the surrounding statutes in the section of Chapter 625 which govern involuntary termination and discuss final rulings and judgments, are notable in that they use *other* phrases than "final order" when referring to their requirements for the prompt resolution of termination cases before circuit court ("final judgment") and prompt appellate decisions ("final ruling").[13] If "final order" was intended to refer solely to circuit court decisions, why would the General assembly not re-use this term when it imposed time limits on when circuit courts should render rulings in termination cases? The obvious answer is that the term "final order" in KRS 625.108 can properly encompass both the trial court's "final judgment" and the appellate court's "final ruling" depending upon how the termination case is finally resolved.

I believe we should interpret the statute consistent with our general understanding of finality. Finality of a court judgment occurs when the time for bringing the last appeal has expired. Only then is sealing to all but the Cabinet appropriate.

---

[13] KRS 625.050(7), which is specifically directed at circuit courts, states: "Any petition filed pursuant to this section shall be fully adjudicated and a *final judgment* shall be entered by the court within six (6) months of the service of the petition on the parents." (Emphasis added). The final sentence of KRS 625.110, which is specifically directed at appellate courts, provides that "[t]he court shall make its *final ruling* within ninety (90) days after the appeal case is submitted to the appellate bench for decision." (Emphasis added). These provisions were added by 2018 Kentucky Laws Ch. 159 (HB 1) § 41 (amending KRS 625.050) and § 27 (amending KRS 625.110).

Practical considerations in how the appellate process works also support this interpretation, as if sealing must be done upon entry of the trial court's final order, this would prevent an appealing party from being allowed to access the trial court record to prepare an appellate brief. This would severely prejudice the defense and could violate parents' rights to competent counsel.[14]

Accordingly, I interpret KRS 625.108(2) as referring to whatever final order concludes the termination case, whether it be one from the trial court if no appeal is filed, or one from the final reviewing appellate court once finality is achieved. Under such an interpretation of KRS 625.108(2), a TPR action remains a "supported case" for which eFiling is appropriate pursuant to eFiling Rules Section 3 and need not be filed conventionally pursuant to Section 9(3) because a TPR case is only confidential rather than sealed to the parties until after finality. Therefore, I would also hold that father not being allowed to eFile his notice of appeal into the correct case number is a clerical error; this is an

---

[14] A review father's appellate brief before the Court of Appeals indicates that he did not withdraw the record, while the Cabinet's appellee brief indicates that it did withdraw the record and returned it. If father was indeed prevented from accessing the record, rather than chose not to access it in preparing his brief, while the Cabinet had unfettered access, this is a serious matter which could have constitutional implications. RAP 28(B) provides that as to items sealed by court order: "Counsel for parties to the appeal or original action may access the record, including items sealed by order of court[.]" If parties are not permitted to access a sealed record, they will not be able to ensure that the record to be submitted to the appellate court is complete. *See* RAP 25 (allowing for narrative statements and corrections of the record, something that would be impossible if the parties cannot review the record after the filing of the final judgment terminating parental rights); RAP 26(D)(2)(a) (permitting counsel for the parties, beginning with the appellant, to withdraw the record on appeal from the trial court or circuit court clerk).

additional reason why father's appeal should be allowed to proceed and review be had on the merits.

**II. Extreme Caution should be Used in Determining that a Termination of Parental Rights Case is Final Due to a Defective Notice of Appeal.**

As noted in *Commonwealth, Cabinet for Health and Fam. Servs. v. S.H.*, 476 S.W.3d 254, 259 (Ky. 2015) (quoting *In re Smith*, 601 N.E. 45 (Ohio App. 1991)), "the termination of parental rights has been called 'the family law equivalent of the death penalty in a criminal case." Considering the seriousness and the finality of such an outcome, such proceedings "require[] complete deference to providing for all the parent's due process rights." *A.P. v. Commonwealth*, 270 S.W.3d 418, 422 (Ky. App. 2018).

While in another civil case, an action by counsel that results in a filing deadline being missed and a cause of action being extinguished may be remedied by a suit against the attorney for malpractice damages, there is no real remedy when this same thing occurs in appealing from the termination of parental rights. There is no remedy to restore the parental relationship after a termination has become final.

Recognizing the seriousness of cutting off the right to an appeal in the criminal context, there is the possibility of a belated appeal if counsel acts ineffectively by failing to file a timely notice of appeal as requested by the defendant. *See e.g. Moore v. Commonwealth*, 199 S.W.3d 132, 140 (Ky. 2006). If counsel's ineffectiveness costs a criminal defendant a victory, a Kentucky Rules of Criminal Procedure (RCr) 11.42 motion may provide relief such as a new

31

trial. Our Courts have never determined that there is an equivalent remedy for a parent whose parental rights have been terminated, has requested that an appeal be filed, and whose counsel has failed to timely file or perfect an appeal. *See T.S. v. Commonwealth,* 602 S.W.3d 795, 797 (Ky. App. 2020) (explaining that in a DNA case, there is no right to a belated appeal where counsel failed to name a necessary party in the notice of appeal).

Therefore, we should be especially cognizant in providing for a generous application of our substantial compliance rules when it comes to determining whether a notice of appeal invoked our Courts' appellate jurisdiction. I would determine that the notice of appeal here was sufficient in essentials and allow the appeal to proceed to a consideration of the merits. Father deserves to know whether he has finally lost his parental rights to child because the family court's judgment was correct or whether he would have ultimately retained his parental rights to child had the appeal been filed conventionally.

### III. The Evidence Appropriately Supported the Family Court's Ruling that the Best Interest of Child would be Served by the Termination of Father's Parental Rights.

As father does not contest that child was properly found to be an abused or neglected child, or that there is at least one ground of parental unfitness, I focus my discussion on his argument that there was a lack of substantial evidence to support a finding by clear and convincing evidence that termination was in the best interest of the child pursuant to the KRS 625.090(3) factors. Father specifically takes issue with the fact that: (1) there was no one to testify concerning the mental health of the child, the status of child's schooling, the

status of child's therapy, or to support the fact that there would be improvement by the child if the parental rights of father were terminated; (2) there was no testimony or report from the guardian *ad litem* that the termination was in the child's best interest; (3) the social worker never saw the natural father or set up services for him; (4) the child was not doing well in the Cabinet's care; and (5) the family court ruled that father did not abandon his child.

"In conducting a best interest analysis, a trial court must consider the six factors enumerated in KRS 625.090(3)(a)-(f)[,]" but need not provide analysis of inapplicable factors for which there is no evidence presented. *Cabinet for Health & Fam. Servs. v. K.H.*, 423 S.W.3d 204, 212 (Ky. 2014).

KRS 625.090(3) specifies in relevant part:

In determining the best interest of the child and the existence of a ground for termination, the Circuit Court shall consider the following factors:

. . .

(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents . . . ;

(d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;

33

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

The Court of Appeals faulted the way this case was put forth by the Cabinet regarding child's prospects for improvement if father's parental rights were to be terminated, and noted that father presented contrary evidence regarding the Cabinet's efforts and his efforts in caring for child. Although the Court of Appeals did not specifically identify which factors it was discussing, I believe it referenced KRS 625.090(3)(d), (e) and (f) and ignored (b) and (c), which the family court extensively discussed.

At most, the Court of Appeals has identified reasons why a different family court judge may have reached a different conclusion, rather than shown that this family court judge's decision to terminate father's parental rights was clearly erroneous.

The record contains clear and convincing evidence from which the family court could properly find that termination was in child's best interests under all the relevant factors. The family court specifically found that pursuant to KRS 625.090(3)(b), child was abused or neglected and would continue to be abused or neglected if father's parental rights were not terminated.

Testimony from ongoing worker Phillip Cross and the contents of the admitted exhibits established that father was not compliant with court orders from the DNA case and was not compliant with the Cabinet case plan which

included referring father to Seven Counties for a substance abuse evaluation and referring father to Accurate Drug and DNA Testing for random drug screens. Cross testified that father did not submit to a requested hair follicle test and did not take any steps to comply with the case plan. While father testified that he was never told where to go for a substance abuse evaluation or for random drug testing and testified he had begun participating in a substance abuse program at the jail that would include random drug testing, the family court was entitled to conclude that father had a poor record of compliance when he was not incarcerated.

The evidence also established that father was serving a fourteen-year sentence as a result of multiple convictions and had an extensive prior criminal history during child's life.[15] Father acknowledged being incarcerated for the previous twenty-eight months, since January 14, 2019. He also acknowledged that prior to his current incarceration, he had only been out of custody for a year and a half. While father hoped to be paroled soon, and stated he had a plan for stable employment and housing when he was released which would enable him to care for child, he had no guarantee he would be released prior to completing his prison sentence.

---

[15] On February 24, 2020, in Nelson County, father pled guilty to two counts of Escape in the Second Degree, three counts of Criminal Possession of a Forged Instrument in the First Degree, Possession of a Handgun by a Convicted Felon, Receiving Stolen Property (Firearm), and Possession of a Controlled Substance in the First Degree (Methamphetamine); he was sentenced on March 25, 2020. Previously on December 4, 2019, father pled guilty in Jefferson County to two counts of criminal possession of a forged instrument; on June 15, 2020, he was sentenced to two years and one day, probated for five years.

The family court also had ample evidence that the Cabinet had made reasonable efforts, but that father had failed to make any effort whatsoever when he was out of custody, thus satisfying KRS 625.090(3)(c) and (d). Cross testified about what the Cabinet had provided to father and about father's lack of compliance, and Cross also testified about his own efforts to maintain contact with father and keep him informed about his case plan. While father testified that a previous worker failed to contact him while he was incarcerated, father's lack of progress while not incarcerated could properly be attributed to his unwillingness to follow the case plan.

Cross's testimony provided an appropriate basis for the family court to conclude that the Cabinet had provided appropriate services and additional services were unlikely to result in reunification. Cross specifically testified that for reunification to occur, father would need to obtain sobriety, maintain housing, and demonstrate that he could live a healthy lifestyle free of drugs and criminal activity. He opined that after father's release from incarceration, it would take over a year for father (if he complied with the case plan) to demonstrate he could do those things to make reunification possible.

While additional evidence could have been introduced to establish KRS 625.090(3)(e), that "[t]he physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered[,]" militated in favor of termination, the lack of adequate evidence on this subpart (had that been the case), would not preclude termination being in child's best interest. All the KRS 625.090(3) factors must be considered in

36

conjunction with one another, and evidence that one factor strongly supports termination may counterbalance that a different factor may only weakly support or even be contrary to termination. It is the overall consideration of all of the KRS 625.090(3) factors that is important, and the family court is granted the discretion to weigh these factors both individually and collectively.

The Cabinet's difficulty in finding child a stable placement that is likely to lead to adoption, does not mean that a child will be better served by retaining father as his legal parent, when father cannot appropriately parent child. All children have the "right to a safe and stable home" and a "finding that adoption of the children is unlikely is not a relevant consideration" to whether the prospects for improvement of children will be met by termination given that termination provides children the possibility of permanence that is simply not achievable by lingering in foster care with no reasonable prospects for returning to stable parental care. *Cabinet for Fams. and Children v. G.C.W.*, 139 S.W.3d 172, 177-78 (Ky. App. 2004). *See M.L.C. v. Cabinet for Health & Fam. Servs.*, 411 S.W.3d 761, 764 (Ky. App. 2013) (explaining "children having a safe and stable home and not lingering in the foster care system is of utmost importance").

Termination can be appropriate even if parents love their child and desire to parent, but simply are not able to do so for reasons beyond their control. *See Cabinet for Health & Fam. Servs. v. K.S.*, 585 S.W.3d 202, 214 (Ky. 2019) (discussing that developmentally disabled parent's inability to parent could constitute abuse or neglect sufficient for termination because it puts the child at risk of harm).

Cross testified that since child was placed with the Cabinet in May 2019, father had not had any contact with child, and failed to provide any care or support for child. Cross testified that although it had been difficult to find child an appropriate and stable placement, he had reason to hope the current placement for child and sibling was a good one as child had felt comfortable disclosing to foster mom that his uncle had molested him, and child appeared bonded to the foster mother. The foster mother testified that she had a good relationship with child, she wanted to be a permanent placement for him, and that she was willing to put in the time and effort required by children.

The family court was authorized to consider the conflicting evidence about whether father cared for child financially while child was in grandmother's temporary custody, and to make a credibility finding against him. It was undisputed that father failed to pay any child support since 2016 and did not support child in any manner while incarcerated. Father's hopes for his future ability to care for child upon release from incarceration were just that, hopes, rather than rooted in his past proof of substantive action in taking the steps needed for a successful reunification. While father expressed frustration that he could not prove himself while incarcerated, father's ongoing and prolonged incarceration is an appropriate factor to be considered, in determining the best interest of child. *Cabinet for Human Res. v. Rogeski*, 909 S.W.2d 660, 661 (Ky. 1995). It was father's dedication to a criminal lifestyle which at least in part rendered him unable to care for child. Although it is certainly laudable that father sought out substance abuse treatment while

38

incarcerated, this did not counteract that he had failed to take any steps to follow any aspect of his case plan while he was not in custody or show that he could maintain sobriety and would follow a case plan while out of custody.

As the family court found, there was no reason to believe that child would not continue to be abused or neglected if returned to father's care, because there were simply no prospects for father to improve to the extent needed to appropriately parent child. *See K.S.*, 585 S.W.3d at 213-14 (explaining a child can be considered neglected due to a parent's failure to complete case goal plans and termination can be appropriate where there is "clear and convincing proof of a potential threat of abuse or neglect if the child is returned to the parent."). Here, father failed to start to work on his case goal plans in the months before his incarceration and there was simply a lack of data as to whether father could be successful in completing a case plan and addressing his substance abuse issues while out of custody.

There was clear and convincing evidence to support the family court's finding that termination of father's parental rights was in child's best interest. Therefore, while I would affirm that we have the jurisdiction to review this appeal, I would reverse the Court of Appeals on the merits and reinstate the termination of father's parental rights.

Lambert, J., joins.

39

COUNSEL FOR APPELLANT:

Adam Sanders
Assistant Counsel
Cabinet for Health and Family Services

COUNSEL FOR APPELLEE, D.W.:

Bethanni E. Forbush-Moss
Law Offices of Forbush-Moss, PSC

COUNSEL FOR APPELLEE, T.A.:

Zackary E. McKee
McKee Law Law Office, P.L.L.C.

COUNSEL FOR APPELLEE, N.W.W.:

Rebecca Ann Smither
Hodge & Smither PLLC