RENDERED: DECEMBER 17, 2015
TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000185-DGE

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND FAMILY SERVICES                    APPELLANT

ON REVIEW FROM COURT OF APPEALS
CASE NOS. 2014-CA-000134-ME, 2014-CA-000135-ME,
2014-CA-000136-ME, & 2014-CA-000137-ME
V.                                  CLAY CIRCUIT COURT
NOS. 2013-AD-00004, 2013-AD-00005,
2013-AD-00006, 2013-AD-00007

S.H.; V.N.M.J.R.N., A CHILD;                               APPELLEES
B.N.N., A CHILD; J.D.N., A CHILD;
AND W.R.D.N., A CHILD

## OPINION OF THE COURT BY JUSTICE KELLER

### AFFIRMING AND REMANDING

Upon petitions by the Cabinet for Health and Family Services (the

Cabinet), the Clay County Family Court terminated the parental rights of S.H. [1]

with regard to her four children. S.H. appealed to the Court of Appeals, which

reversed and vacated the termination orders,[2] finding that the family court

erroneously applied Family Court Rule of Practice and Procedure (FCRPP) 7(1).

This Court granted discretionary review, and for the reasons stated herein, we

affirm the opinion of the Court of Appeals.

---

[1] This case concerns minor children; therefore, we will not use the names of the parents or the children.

[2] The family court entered a separate order for each of the four children.

# I. BACKGROUND.

Between 2004 and 2010, S.H. bore four children with three different fathers.[3] The Cabinet first became concerned with S.H's children following an incident of domestic violence in 2009. The Cabinet investigated and filed dependency, neglect, or abuse petitions in the interest of three of the children— as the fourth had yet to be born. The family court found that one of the fathers had neglected all three of the children but made no findings regarding S.H. The family court did not remove the children from the home, and the case was closed within the year.

Thereafter, in March 2011, Kentucky State Police requested the Cabinet's involvement after one of the children, five years old at the time, walked nearly a mile to a neighbor's house in snow and near freezing temperatures wearing flip-flops. Following further dependency, neglect, or abuse petitions, the family court found neglect by S.H. and ordered emergency custody of all four children to the Cabinet. All the children have remained in the care of the Cabinet, i.e. foster care, since March 10, 2011.

In May 2011, the Cabinet filed additional petitions after two of the children exhibited sexually reactive behavior in foster care. The family court adjudicated that all four children had been neglected or abused by S.H., finding improper supervision, and that S.H. had knowingly failed to protect them from sexual harm.

---

[3] We note that one of the fathers voluntarily consented to terminate his parental rights. We also note that neither of the other two fathers joined S.H.'s appeal; therefore, the family court's termination of their parental rights is final.

2

Upon the children's placement in foster care, the Cabinet offered S.H. reunification services. S.H. admitted to chronic substance abuse problems, witnessing prevalent physical and sexual abuse of her children, and a lack of parenting skills and suitable housing. The Cabinet recommended and made available a variety of services to address each of these issues; however, S.H. rarely, if ever, took advantage of the offered services. She refused to participate in at least two drug rehabilitation programs, failed to comply with drug screenings, never attended appointments with domestic violence counselors, and did not apply for low-income housing. Furthermore, although S.H. initially visited her children in foster care, she has not had any contact with them since September 2012.

Due to the lack of progress toward reunification the Cabinet petitioned the family court on February 13, 2013 to involuntarily terminate the parental rights of S.H. and each father with respect to all four children. The court consolidated the cases and held a final hearing on December 12, 2013. No discovery order was in place before the hearing. S.H. was not present at the hearing. When the family court asked why she was not present, her Guardian Ad Litem (GAL) stated that she had been incarcerated[4] but was planning to attend if released. The GAL also stated that, to the best of his knowledge, S.H.

---

[4] We note that according to the Cabinet's Motion for Appointment of GAL, S.H. was believed to be incarcerated as of July 24, 2013. We also note that according to S.H.'s affidavit in support of her motion to proceed before the Court of Appeals *in forma pauperis*, she was incarcerated as of January 27, 2014.

had been recently released, but he had been unable to contact her and did not know why she was not present.

The Cabinet called the only witness who testified at the hearing: Sherry Shepherd, the primary social services caseworker assigned to S.H. and her children since the Cabinet first became involved with the family in 2009. Before Ms. Shepherd testified, S.H., through her GAL, objected and argued that FCRPP 7(1) barred Ms. Shepherd's testimony and the admission of any exhibits due to lack of notice. That rule requires the parties to give at least 14 days notice of witnesses and exhibits in any action in which the permanent custody of children is at issue. The family court overruled the objection, finding that the proceeding was a termination of parental rights hearing and not a permanent custody hearing. The court reasoned that, because Kentucky Revised Statute (KRS) 625.090(6) permitted termination hearings to be bifurcated, it would initially make a termination determination with a custody determination to follow at a later hearing scheduled for December 19, 2013. The family court allowed the Cabinet to introduce exhibits and Ms. Shepherd to testify, and she testified consistent with the facts set forth above.

Following Ms. Shepherd's testimony and minimal cross-examination, the family court announced from the bench its decision to terminate the parental rights of S.H. The next day, the Cabinet filed a notice pursuant to FCRPP 7(1) that Ms. Shepherd would testify at the hearing set for December 19. At that hearing, the family court, exercising its discretion to modify the 14 day notice requirement, allowed Ms. Shepherd to testify. Ms. Shepherd testified that the

4

children were receiving counseling and progressing well in foster care. S.H. was not present for the second hearing either, and the Cabinet retained custody of all four children. On December 20, 2013, the family court entered a written order for each child, which terminated the parental rights of S.H. and continued custody with the Cabinet.

S.H. appealed these December 20 Orders to the Court of Appeals. In a 2-1 decision, the Court reversed and vacated the termination orders, finding that the family court erred when it admitted Ms. Shepherd's testimony and exhibits. In so doing, the Court found that FCRPP 7(1) applied to termination of parental rights hearings because once S.H.'s rights were terminated she could no longer have custody of her children. The court also concluded that the error was not harmless because, had the family court excluded Ms. Shepherd's testimony and exhibits, there would have been no evidence introduced to support terminating S.H.'s parental rights, and thus, the result of the hearing would have been different.

The Cabinet appealed, and this Court granted discretionary review.

## II.   ANALYSIS.

The Cabinet argues that the Court of Appeals erred when it vacated the family court's termination orders. We disagree. It is undisputed that the Cabinet did not provide S.H. with a witness or exhibit list prior to the December 12 termination of parental rights hearing; therefore, the issue is whether FCRPP 7(1) applied to that hearing. We review this question of law *de novo*, and, as with statutes, we interpret rules in accordance with their plain

5

language. *Southern Financial Life Ins. Co. v. Combs*, 413 S.W.3d 921, 926 (Ky. 2013); *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 296 (Ky. 2010).

> FCRPP 7(1) states:
>
> Unless otherwise ordered by the court, in any action in which the permanent custody or time-sharing of the child(ren) is in issue, each party shall, not less than 14 days prior to the day set for hearing, provide the other party(ies) with a list of the names and addresses of every person and a short statement of the subject of their testimony, other than a parent or the child(ren) of the parents, expected to be called as a witness, as well as a list of exhibits to be entered.

Based on the unambiguous language in the rule, FCRPP 7(1)'s notice requirement applies to "*any action* in which the permanent custody or time-sharing of the child(ren) is in issue." (emphasis added). Thus, the only question is whether the permanent custody of the children was in issue at the December 12 hearing. We hold that it was.

The children's permanent custody was undoubtedly in issue at S.H.'s termination of parental rights hearing. It is undisputed that the children had been in the care and custody of the Cabinet since 2011 and that this custody was not permanent, as evidenced by the Cabinet's reunification efforts. It was only when it became clear that S.H. was incapable of reunification that the Cabinet sought a more permanent status for the children. To achieve this, the Cabinet petitioned the family court to permanently terminate S.H.'s parental rights to custody and care of the children, thus unquestionably putting the children's permanent custody in issue. Should the Cabinet succeed in terminating S.H.'s parental rights, the permanent custody of the children will vest in either the Cabinet or someone other than S.H. In other words, the

6

termination of S.H.'s right to custody created a permanent custodial vacuum that must be filled. In this case, the Cabinet ultimately retained and was awarded permanent custody, which could only vest after S.H.'s rights were terminated.

We are further convinced that this interpretation is correct by viewing FCRPP 7(1) in context. There are 36 FCRPP, which are organized into six substantive sections. FCRPP 1(2) clearly states, "[t]hese Rules shall be applicable to the procedure and practice in all actions pertaining to . . . termination of parental rights; . . . , or any other matter exclusively within family law jurisdiction, except for any special statutory proceedings, which shall prevail over any inconsistent procedures set forth in these Rules." The Cabinet has not identified any "special statutory proceedings" which prevail over FCRPP 7(1); therefore, that exception does not apply to bar rule 7(1)'s applicability.

FCRPP 7 falls within "Sec. III. Custody, Shared Parenting, Visitation, and Support" and is titled "Custody." Rule 6, the "General Provisions" rule governing that section, provides, "[t]he provisions of this section shall apply to all actions in which there are disputes regarding custody, shared parenting, visitation or support." As stated above, a termination of parental rights hearing is an action in which custody is in issue; therefore, rule 7 applies. Finally, FCRPP 32-36 make up "Sec. VII. Adoption and Termination of Parental Rights." While these rules provide for certain procedures governing a termination of parental rights hearing, i.e. the petition, the venue, the order, and review,

nothing in the section limits the procedures governing termination hearings to those found in that section. In other words, no other rule or statute excludes FCRPP 7(1) from applying in a termination of parental rights hearing.

FCRPP 7(1)'s application to termination of parental rights proceedings was not an accidental construction, on the contrary, it is vital to protect the rights of parents. The seriousness of the ramifications of terminating a parent's rights to custody and care of a child cannot be overstated. "The rights to conceive and to raise one's children have been deemed essential, basic civil rights of man, and rights far more precious than property rights." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (internal quotations and citations omitted). For this very reason, the termination of parental rights has been called "the family law equivalent of the death penalty in a criminal case." *In re Smith*, 77 Ohio App. 3d 1, 16 (1991). In Kentucky, we recognize the magnitude of such proceeding by requiring the Commonwealth to prove all of the statutory elements by clear and convincing evidence, our highest civil standard. KRS 625.090.

For the preceding reasons, a parent facing a termination hearing should be afforded every procedural protection the law allows. FCRPP 7(1) establishes such a procedural protection. Requiring a party to identify and give notice of potential witnesses and exhibits drastically reduces unfair surprises and defines the evidence to be presented. Furthermore, a 14 day notice requirement is not overly burdensome in light of the potential result of the hearing.

Holding that FCRPP 7(1) applies to termination of parental rights proceedings is not the end of the analysis; we must also consider the effect of the first phrase of the rule. "Unless otherwise ordered by the court" qualifies FCRPP 7(1) and its presence in the rule gives discretion to a family court to alter the 14 day notice requirement. *See Henderson v. Commonwealth*, 507 S.W.2d 454, 458 (Ky. 1974) (interpreting similar language in KRS 439.510 to give discretion to a trial court). Therefore, we must now determine the extent of the family court's discretion.

As stated above, the family court permitted Ms. Shepherd to testify at two hearings: the December 12 termination hearing and the December 19 custody hearing. The Cabinet provided no FCRPP 7(1) notice in advance of the first hearing and six days' notice before the second hearing. At the second hearing, the family court employed its discretion under the rule to cut the 14 day notice requirement approximately in half. By extension, we are faced with the secondary issue of whether the family court abused its discretion by allowing Ms. Shepherd's testimony and exhibits at the December 12 hearing when the Cabinet failed to give any FCRPP 7(1) notice.

We hold that the introductory phrase of FCRPP 7(1) extends discretion to the family court to reasonably alter the notice requirement. The reasonableness of the alteration will depend on the specific facts of the case. Here, we hold that the family court did not abuse this discretion when it allowed Ms. Shepherd to testify at the December 19 hearing when the Cabinet gave six days notice. However, the family court, through its interpretation of

9

FCRPP 7(1), abused its discretion when it allowed Ms. Shepherd's testimony and exhibits at the December 12 hearing. S.H. had no notice that the Cabinet would call Ms. Shepherd, and, therefore, could not have fully prepared a defense. While it could be argued that S.H and her counsel should have had some notion of the nature of the evidence that the Cabinet would anticipate presenting, it remains that the lack of full notice and access to exhibits precluded S.H. and her counsel from fully preparing a defense.

In summary, we hold that FCRPP 7(1) applies to termination of parental rights proceedings. Here, the family court erred when it allowed Ms. Shepherd to testify and the Cabinet to introduce exhibits at the December 12 hearing because the Cabinet failed to comply with the rule's 14 day notice requirement.

While we recognize S.H.'s alleged significant parenting deficits found in the record of this case and likewise recognize the important goal and necessity of permanency for these children, the new FCRPP must not be overlooked. The family court must often undertake the difficult task of determining what is in the best interests of children keeping in mind the rights of all parties. The FCRPP are designed to assist the court and the parties in accomplishing this complex task. Nothing in this opinion should be interpreted as denigrating the family court's efforts to interpret these new rules herein.

### III. CONCLUSION.

For the reasons stated above, we affirm the opinion of the Court of Appeals, which remanded this case to the Clay county Family Court.

10

Minton, C.J.; Abramson, Cunningham, Keller, Noble, and Venters, JJ., sitting. All concur. Wright, J., not sitting.

COUNSEL FOR APPELLANT:

Stephen David Spurlock

COUNSEL FOR APPELLEE, S.H.:

James Wooten II

COUNSEL FOR APPELLEES, V.N.M.J.R.N., A CHILD; B.N.N., A CHILD; J.D.N., A CHILD; W.R.D.N., A CHILD:

Kenneth Stephenson Stepp