RENDERED: FEBRUARY 28, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0677-MR

JARED STONE                                                                    APPELLANT

v.
APPEAL FROM NELSON CIRCUIT COURT
HONORABLE JOE G. BALLARD, JUDGE
ACTION NO. 22-CI-00204

GENEVIEVE STONE
(NOW BARBOUR)                                                           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND KAREM, JUDGES.

KAREM, JUDGE: Jared S. Stone appeals from the Nelson Circuit Court's

findings of fact, conclusions of law, and order on timesharing, contempt, and other

matters. The circuit court addressed numerous motions brought by Stone and his

former wife, Genevieve Barbour, relating to their four children. The major issues

included therapy for the children, Barbour withholding Stone's visitation, and

allegations of abuse against Stone. Stone argues that (1) the circuit court should not have allowed the testimony of the children's therapist nor interviewed the children in chambers because Barbour failed to give notice pursuant to Family Court Rules of Procedure and Practice (FCRPP) 7(1), and (2) the circuit court should have held Barbour in contempt of court for violating the terms of their dissolution settlement agreement.

Before addressing the merits of this appeal, we must resolve two pending motions brought by the appellee, Barbour.

The notice of appeal in this case was filed on June 8, 2023. The filing of Barbour's brief was delayed by the withdrawal of her counsel. New counsel for the appellee entered his appearance on December 15, 2023. Shortly thereafter, Stone filed a motion for additional time to file a brief. The motion was granted but the brief was not timely filed. Stone filed another motion for additional time and tendered the brief. On May 8, 2024, the Court granted the motion and ordered the brief to be filed.

On July 8, 2024, Barbour moved for additional time to file the appellee's brief. The motion was granted, and Barbour was ordered to file the brief on or before September 6, 2024. On that date, Barbour filed a second motion for additional time to file the brief. On September 26, 2024, Barbour filed a third

-2-

motion for additional time to file the brief and four days later tendered the brief. Stone filed a motion for additional time to file a reply brief on October 14, 2024.

On October 17, 2024, this Court entered an order passing consideration of Barbour's second and third motions for additional time to file a brief to the merits panel and granted Stone fifteen days to file a reply brief. Stone did not file a reply brief.

This appeal has been affected by numerous delays, with the result that more than two years have elapsed since January 31, 2023, the date the circuit court conducted the final evidentiary hearing on the parties' motions. The delays are attributable to Stone and, to a greater extent, to Barbour. However, because this appeal concerns the fate of four children and their timesharing arrangements with their parents, we will grant Barbour's motions and order the appellee's brief to be filed.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Stone and Barbour were divorced in Indiana in November 2021. They have four children who were aged thirteen, ten, eight, and four at the time of the final hearing. The dissolution settlement agreement provided for joint legal custody of the children, with Barbour having primary physical custody and Stone having weekend visitation.

During the divorce proceedings, Barbour moved with the children to Nelson County, Kentucky. Stone subsequently moved to Nelson County to be closer to the children and resides down the street from Barbour. In May 2022, the final decree and dissolution settlement agreement were registered in Nelson Circuit Court.

Conflict arose between Stone and Barbour over counseling and therapy for the children; Stone alleged that Barbour did not consult with him before sending the children for counseling and therapy and did not consult with him about the choice of a therapist. He also became concerned that Barbour was not ensuring that the children attended school regularly and on time. Barbour, on the other hand, alleged that Stone had abused the children.

There were two abuse allegations brought against Stone relating to the youngest child, one in November 2021 and one in June 2022. The Indiana Department of Child Services investigated the first allegation and found it to be unsubstantiated. The Department for Community Based Services (DCBS) in Kentucky conducted an investigation of the second allegation and it was either dropped or found to be unsubstantiated. A third abuse allegation was made against Stone in November 2022, relating to the second-youngest child. At the time of the final hearing, that investigation was ongoing, but it did not appear that DCBS was going to take any action.

The eldest child, a daughter, was experiencing serious mental health problems, including depression and suicidal thoughts. She was hostile towards Stone and refused visitation with him. Under the terms of their settlement agreement, Barbour and Stone had agreed to follow the recommendations of the eldest child's counselor. Counseling was set up with Amanda Lacefield, but Stone objected and canceled it because Lacefield told him she did not have experience with fathers being involved in their children's counseling.

Barbour arranged for the youngest child to receive therapy from Krissy Skees, without informing Stone. When he learned about the therapy, Stone canceled the sessions because he was not consulted about the choice of counselor and Skees refused to provide him with her notes.

Barbour filed a motion requesting the court require the parties to cooperate and allow the children to engage in counseling. She also filed a motion alleging that Stone had physically and emotionally abused the children and requested the court suspend timesharing until a counselor had evaluated the situation. Stone responded by denying the abuse allegations and filed a series of motions to hold Barbour in contempt for matters relating to the children's schooling, therapy, and timesharing. Barbour also moved the court to hold Stone in contempt and to modify his timesharing to every other weekend because she had no weekends with the children.

Following a hearing on January 31, 2023, the circuit court entered findings of fact, conclusions of law, and order on timesharing, contempt, and other matters. It denied Barbour's motion to suspend Stone's parenting time with the three younger children. As to the eldest child, visitation was temporarily suspended due to her mental health issues and her refusal to see her father. Stone's motion for 50/50 parenting time was denied and the court ordered Stone to have parenting time on alternate weekends and every Wednesday from 6:00 p.m. until Thursday morning. The parties were ordered to cooperate regarding the children's therapy and counseling, to discuss and agree upon a family counselor, to have the children at school on time, and to refrain from discussing the case with the children and making disparaging remarks to the children. Stone filed a motion to alter, amend, and/or vacate which the circuit court denied. This appeal by Stone followed.

## ANALYSIS

Stone argues that due to Barbour's failure to provide notice that Krissy Skees, the therapist for the youngest child, and the children would be testifying, as required under FCRPP 7(1), the circuit court abused its discretion in permitting her to testify at the hearing and in permitting the two eldest children to complete an in-camera interview with the court. The Rule provides as follows:

> Unless otherwise ordered by the court, in any action in
> which the permanent custody or time-sharing of the

-6-

child(ren) is in issue, each party shall, not less than 14 days prior to the day set for hearing, provide the other party(ies) with a list of the names and addresses of every person and a short statement of the subject of their testimony, other than a parent or the child(ren) of the parents, expected to be called as a witness, as well as a list of exhibits to be entered.

Barbour was not required to give notice that the children would be testifying because the plain language of the Rule specifically exempts children from the notice requirement.

Stone has failed to preserve his argument regarding the testimony of Skees in his prehearing statement as required by the Kentucky Rules of Appellate Procedure (RAP). "A party shall be limited on appeal to issues identified in the prehearing statement, except that upon a timely motion demonstrating good cause, the Court of Appeals may permit additional issues to be raised." RAP 22(C)(2). Stone's prehearing statement lists as an issue "whether advance notice required for child witnesses," but does not mention notice relating to the therapist's testimony. Stone has not moved to amend his prehearing statement to add this issue.

However, even if Stone's prehearing statement had properly identified the failure to give notice that Skees would be a witness as an issue on appeal, he would not prevail. Although Barbour's failure to give notice was a violation of FCRPP 7(1), our review of the proceedings indicates that the admission of her testimony was harmless error. The harmless error rule provides that:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Kentucky Rules of Civil Procedure (CR) 61.01.

Skees testified that she had worked as a licensed clinical social worker since 2015. She began therapy with the youngest child on August 18, 2022, when he was four years of age. Skees explained that her verbal interactions with the child were limited because of his young age. According to Skees, he suffered from anxiety, had separation issues from his mother, and suffered from adjustment issues going from household to household for timesharing. She testified that when the therapy started Barbour told her there was a no-contact order with Stone and did not provide her with Stone's information. Skees conducted approximately ten sessions with the child until Stone discontinued the therapy on November 17, 2022. She testified that Stone was unhappy that he was not notified that the therapy was occurring and did not trust the therapists or feel they were working with him. Skees also testified that Stone wanted her therapy notes from their sessions, but she was not permitted to release these records to him.

Stone has failed to explain how this testimony negatively affected his substantial rights. In some respects, Skees's testimony assisted his case by confirming his allegations that he was not informed or consulted about his youngest child's therapy sessions and that Barbour did not provide Skees with a copy of the purported no-contact order or with Stone's contact information. The situation is clearly distinguishable from that in *Commonwealth, Cabinet for Health and Family Services v. S.H.*, 476 S.W.3d 254 (Ky. 2015). In *S.H.*, a hearing to terminate parental rights was held without the presence of the mother, who was incarcerated. The only witness at the hearing was the primary social services case worker, who was permitted to testify without the notice required by FCRPP 7(1). Her testimony essentially comprised the entire case against the mother. The Kentucky Supreme Court held that the trial court abused its discretion in allowing the testimony because the lack of full notice and access to exhibits precluded S.H. and her counsel from fully preparing a defense. *S.H.*, 476 S.W.3d at 259-60. By contrast, Stone's parental rights were not in danger of being terminated, he was present at the hearing, and his attorney was able to cross-examine Skees thoroughly. As we have already noted, Skees's testimony was not particularly damaging to his case. Thus, in addition to failing to preserve this argument as required under RAP 22(C)(2), Stone has failed to show how his substantial rights

were threatened by the lack of notice of Skees's testimony and consequently, we conclude its admission was harmless error.

For his second argument, Stone contends that the trial court abused its discretion in refusing to find Barbour in contempt of court. Contempt is defined as "the willful disobedience of or the open disrespect for the court's orders or its rules." *Nienaber v. Commonwealth ex rel. Mercer*, 594 S.W.3d 232, 235 (Ky. App. 2020) (citations omitted). "In a civil contempt proceeding, the initial burden is on the party seeking sanctions to show by clear and convincing evidence that the alleged contemnor has violated a valid court order." *Id.* at 236 (citation omitted). "Once the moving party makes out a prima facie case, a presumption of contempt arises, and the burden of production shifts to the alleged contemnor to show, clearly and convincingly, that he or she was unable to comply with the court's order or was, for some other reason, justified in not complying." *Id.* (citation omitted).

Specifically in the context of a dissolution decree, "[t]he failure of either party, without good cause, to comply with a provision of a decree or temporary order or injunction, including a provision with respect to visitation or child support shall constitute contempt of court, and the court shall remedy the failure to comply." Kentucky Revised Statute (KRS) 403.240(2). "Good cause" is defined by the statute to include "mutual consent of the parties, reasonable belief

by either party that there exists the possibility of endangerment to the physical, mental, moral, or emotional health of the child, or endangerment to the physical safety of either party, or extraordinary circumstances as determined by the court." KRS 403.240(3).

Stone asked the court to hold Barbour in contempt for disobeying the court's orders regarding two issues: first, that Barbour made unilateral decisions regarding the children's therapy and medical issues in violation of their joint custody agreement; and second, that she withheld the children from timesharing in the summer of 2022, also in violation of their settlement agreement.

Stone argues that the circuit court's findings were clearly erroneous because in her testimony Barbour admitted that she did not notify Stone about the children's therapy appointments, medical appointments including emergency room visits, and did not notify him when she was selecting a therapist.

A court is not compelled to make a finding of contempt or to impose sanctions. Its contempt powers are exercised "with nearly unfettered discretion." *Murry v. Murry*, 418 S.W.3d 432, 436 (Ky. App. 2014). The circuit court noted that the children's therapy had been a persistent source of conflict between Stone and Barbour since their divorce. The court noted that Stone canceled the counseling sessions for the eldest child because he disapproved of the counselor on the grounds that she did not have experience with fathers being involved with their

-11-

children's counseling. Stone ended the youngest child's therapy with Skees because he had not been notified of the therapy, he wanted Skees's therapy notes, and he did not trust Skees. The court expressed concern about Stone's insistence on receiving the therapy notes, stating "the therapy process is intended to facilitate candor between a therapist and a client. If a child knows that his or her conversations with their therapist are going to be divulged to a parent, there is a real probability that the child will fail to disclose information that should be divulged." The court speculated that Stone's insistence upon receiving the therapy notes was an attempt to obtain information about the DCBS investigation.

At the time of the final hearing, the eldest child did not wish to receive any counseling or therapy although she had seen a therapist on three recent occasions. The two middle children were receiving counseling. The youngest child is not receiving counseling since his therapy with Skees was canceled by Stone. The court acknowledged Stone's testimony that he believed counseling would be good for the children, but he would like to be involved with selecting the counselor and with the process from the outset. Barbour testified that she did not include Stone in selecting a therapist for the eldest child because he failed to respond when she told him about the issues regarding the child's mental health. The court concluded that there was a power struggle going on between Stone and

Barbour, that they each believed they should be able to call the shots and that they had been unable to effectively communicate or compromise.

The court never made a ruling on the motion for contempt in connection with the therapy, nor did Stone request an express ruling on the motion. The court's observations about the conflicts between the parties over the children's therapy are supported by substantial evidence in the record. Although the court did not expressly refer to Barbour's testimony about excluding Stone from decisions regarding therapy, it placed the blame for the situation on both parties. Its decision not to hold Barbour in contempt was well within its discretion.

As to Stone's argument that the court should find Barbour in contempt for withholding visitation time, the court acknowledged that Stone had not had parenting time with the eldest child since November 2021 and did not have parenting time with the three younger children during the months of July and August 2022. With respect to the eldest child, the court found that "she has flat out refused to visit." The court noted that she "is extremely strong willed, much like both of her parents" and that Barbour would have to physically force her to resume visitation with Stone.

As to the younger children, the court accepted Barbour's testimony that she did not permit visitation in July and August 2022 because of the pending DCBS investigations and a case plan in place in which she was not to allow the

-13-

children to visit with Stone. The court found that her conduct did not constitute contempt of court because she had a valid reason for withholding visitation.

Stone argues that a prevention plan was not in place in June 2022, when Barbour began withholding the children. He points out that when Barbour filed a motion to suspend his visitation in July 2022, the motion did not mention a prevention plan, nor was a prevention plan mentioned at subsequent hearings. He also argues that her accompanying affidavit was untruthful.

However, the circuit court found that Barbour withheld visitation in July and August 2022, not solely because of a prevention plan, but because of the pending DCBS abuse investigation. The court concluded that this was a valid reason for withholding visitation. The court did caution Barbour that Stone was entitled to court-ordered timesharing with the children and warned her that the failure to enforce timesharing in the future could result in her being held in contempt.

The circuit court also exercised its discretion in Stone's favor by denying Barbour's motions to hold him in contempt for taking the children out of state without notification and for failing to allow her the right of first refusal when he had to work on weekends and left the children with his parents. The court recognized that Stone had missed a significant portion of his time with the children in the summer of 2022, and did not hold him in contempt for that reason.

The court did its utmost to be fair to both parties and adopted a non-punitive approach in order to promote the best interests of the children.  The decision by the circuit court not to find Barbour in contempt for withholding visitation during the summer of 2022 was made well within its discretion and will not be disturbed on appeal.

## CONCLUSION

By separate order, Barbour's motions for additional time to file a brief are hereby granted and her appellee's brief is ordered to be filed.

The findings of fact, conclusions of law, and order of the Nelson Circuit Court are hereby affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Bethanni E. Forbush-Moss
Louisville, Kentucky

BRIEF FOR APPELLEE:

Jason Paul Floyd
Bardstown, Kentucky